**EXHIBIT B**

# ASSIGNMENT AND ASSUMPTION
# OF
# FRANCHISE AGREEMENT

ASSIGNMENT AND ASSUMPTION OF FRANCHISE AGREEMENT (this "Assignment and Assumption Agreement") dated as of October 16, 2017 ("Effective Date"), among INGRASSIA INTERIOR ELEMENTS, INC., an Illinois corporation, f/k/a Ingrassia Furniture, Inc., an Illinois corporation ("Franchisee"), JB VILLAGE, LLC, a Nevada limited liability company ("Assignee") and AVF FRANCHISING, LLC, a Michigan limited liability company ("Franchisor").

A. Franchisor granted to the Franchisee a license and Franchise to conduct the operation of an Art Van Furniture store (the "Franchised Business") at the premises located at 7047 Newburg Road, Rockford, Illinois 61108 (the "Premises"), which is evidenced by a Franchise Agreement dated as of April 9, 2015 (the "Franchise Agreement), together with certain ancillary documents, as the same may have been and may be amended or supplemented, and collectively referred to as the "Franchise Documents").

B. Franchisee has requested a transfer of the Franchised Business to Assignee as of October 16, 2017 (the "Transfer Date").

C. In connection with such transfer, the Franchisee has requested that Franchisor (i) consent to the assignment and assumption of the rights and obligations of Franchisee under the Franchise Documents, and (ii) the assumption of such rights and obligations by Assignee, and the Franchisor has agreed to consent to such assignment and assumption, subject to the terms and conditions of this Assignment and Assumption Agreement.

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties to this Assignment and Assumption Agreement agree as follows:

1. As of the Effective Date, the Franchisee hereby transfers and assigns to the Assignee, all of Franchisee's rights, privileges, title and interest and obligations in and to the Franchise Agreement and the other Franchise Documents, together with the unexpired residue of the term of the Franchise Agreement and all benefits to be derived therefrom subject to the payment of royalties and fees and observance and performance of the covenants, provisions and conditions on the part of the Franchisee thereto.

2. The Franchisee covenants with the Assignee that (a) the Franchise Agreement is a valid and existing franchise agreement, (b) payment of all royalties and fees has been made to the Effective Date, (c) the covenants provisions and conditions thereof on the part of the Franchisee have been duly observed and performed up to the Effective Date, (d) the Franchisee is entitled to assign the Franchise Agreement; (d) subject to the payment of royalties and other fees and the observance and performance of the covenants, provisions and conditions of the Franchise Agreement, the Assignee may enjoy the rights of a Franchisee under the Franchise Agreement for the residue of the said term, without interruption by the Franchisee or any person claiming through it; and (e) the Franchisee shall, at all times hereafter at the request and cost of the Franchisee, execute such further assurances with respect of this Assignment and Assumption Agreement as the Franchisor may reasonably require.

3. The Assignee covenants with the Franchisee and the Franchisor that the Assignee will, throughout the residue of the term of the Franchise Agreement and any renewal thereof,

4. pay all royalties fees and other charges and obligations of every kind and nature whatsoever, existing now or incurred hereafter, at the time and in the manner provided in the Franchise Agreement and observe and perform the covenants, provisions and conditions on the part of the Franchisee therein set forth.

4. The Franchisor hereby acknowledges that the Franchise Agreement as of the Effective Date is assigned to Assignee and the Franchisor hereby consents to the assignment and assumption by Assignee.

5. Franchisee hereby delegates to Assignee, and Assignee hereby assumes and agrees to perform and discharge, any and all unperformed obligations of Franchisee under the Franchise Agreement and the other Franchise Documents, including, without limitation, the payment of all Obligations now existing or hereafter arising (the "Assumed Obligations"), and generally to subject itself to all of the terms, provisions, and conditions of the Franchise Agreement and the other Franchise Documents. Without limiting the generality of the foregoing, Assignee hereby (i) expressly makes to the Franchisor the representations and warranties of the Franchisee set forth in Article 18 of the Franchise on and as of the Effective Date; and (ii) grants to the Franchisor security interests in all of the property described in Section 4.15 of the Franchise Agreement, whether now owned or hereafter acquired, and whether or not previously pledged by Franchisee pursuant to the Franchise Agreement; Simultaneously, with Assignee's assumption of the Assumed Obligations, the Franchisor shall and does hereby release and discharge: (i) Franchisee from any and all liability for the payment or performance of the Assumed Obligations and from any further obligations under the Franchise Agreement and any of the other Franchise Documents; and (ii) Brian Belida and Rose Ingrassia-Belida from any all liability for the payment or performance of the Assumed Obligations and from any further obligations under their Joint and Several Unconditional Guaranty dated as of April 9, 2015.

6. Franchisee, individually and for its parent, affiliates, successors, assigns, personal representatives, executor, and trustees, as applicable, unconditionally releases and discharges AVF, any person acting by, through, under or on behalf of AVF, and the past and present shareholders, officers, directors, employees, successors, assigns, agents, parent and affiliates of AVF, including but not limited to Art Van Furniture, LLC (collectively, "The AVF Group") from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, covenants, contracts, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Franchise Agreement, any prior or existing franchise agreement, or any other agreement or document executed by Franchisee and AVF (or any affiliate of AVF), the franchise relationship, or any other prior or existing business relationship between Franchisee and AVF (or any affiliate of AVF) which Franchisee has asserted, may have asserted or could have asserted against any of the AVF Group at any time up to the date of this Assignment and Assumption Agreement, including specifically, without limitation, claims arising from contract, written or oral communications, alleged misstatements of fact, indebtedness of any kind or nature, and acts of negligence whether active or passive.

7. Except as otherwise set forth herein, Assignee shall be the "Franchisee" under the Franchise Agreement, and all references to the Franchisee in the Franchisee Agreement shall be deemed to refer to Assignee.

8. Pursuant to the Joint and Several Unconditional Guaranty dated of even date herewith executed by Qasem Abdeljaber, Luay Abdeljaber, Mohammad Abdeljaber, Fadi Abdeljaber, Musa Abdeljaber and Meqdad Abdeljaber (collectively, the "New Guarantors"), the New Guarantors, shall be the "Guarantors" under the Franchise

1-Amd, Assign, Assumption.v1 - 2 -

       Agreement, and all references to the Guarantors in the Franchise Agreement shall be deemed to refer to the New Guarantors.

9. Section 17.6 of the Franchise Agreement is amended to delete the name, address and facsimile number of the Franchisor, replacing them with the following:

          AVF Franchising, LLC
          Attention: Andrew Dolski, Regional Manager
          6500 E. 14 Mile Road
          Warren, Michigan 48092
          Telephone No. (586) 983-2015

10. Assignee agrees that its assumption of liability hereunder shall constitute a direct and primary liability on the Franchise Agreement.

11. Franchisee represents, warrants and agrees that there exists no Default or Event of Default under the Franchise Documents.

12. Assignee represents, warrants, and agrees that (i) after giving effect to this Assignment and Assumption Agreement, there exists no Default or Event of Default under the Franchise Agreement, (ii) as of the Effective Date, the Franchise Documents are the legal, valid and binding agreements and obligations of Assignee enforceable in accordance with their terms, as modified herein, (iii) the Franchisor is not in default under any of the Franchise Documents and Assignee has no offset or defense to its performance or obligations under any of the Franchise Documents, and (iv) the representations contained in the Franchise Documents, as amended hereby, remain true and accurate in all respects, and (v) entering into this Assignment and Assumption Agreement will not cause Franchisee or Assignee to be in default of any other agreement nor does any matter exist which would prevent Assignee from entering into this Assignment and Assumption Agreement.

13. Appendix A, Appendix B, Appendix E, Exhibit E, Exhibit F, Exhibit G and Exhibit I are hereby deleted in their entirety and replaced with the new Appendix A, Appendix B, Appendix E, Exhibit E, Exhibit F, Exhibit G and Exhibit I attached to this Assignment and Assumption Agreement. All references in the Franchise Agreement to Appendix A, Appendix B, Appendix E, Exhibit E, Exhibit F, Exhibit G and Exhibit I are to refer to the new Appendix A, Appendix B, Appendix E, Exhibit E, Exhibit F, Exhibit G and Exhibit I.

14. The obligation of the Franchisor to consent to the amendment, assignment and assumption of the Franchise Agreement is subject to Franchisor's receipt of the following, on or before the date hereof, all of which must be satisfactory in form and substance to the Franchisor, in its sole discretion:

   (a) This Assignment and Assumption Agreement duly executed by Assignee and Franchisee;

   (b) The Joint and Several Unconditional Guaranty duly executed by the New Guarantors.

   (c) Franchisor shall have received evidence of the proposed sale and assignment ("Transfer") setting forth all of the terms and conditions of the Transfer between Franchisee and Assignee, including: (i) the consideration for the Transfer; and (ii) a detailed list of the items to be transferred, including any agreements necessary or useful in the conduct of the business.

   (d) Assignee must deliver to Franchisor a non-refundable $25,000 franchise fee;

(e) Franchisee must deliver to Franchisor: (i) a $6,250 Transfer Fee; (ii) the General Release Agreement executed by Franchisee, and (ii) signed Certificate of Secretary with corporate resolutions approving the assignment and assumption by Assignee.

(f) Any other document reasonably required by Franchisee necessary to complete the intended purpose of this Assignment and Assumption Agreement, the Franchise Agreement or any ancillary document.

15. Except as hereby expressly modified, the Franchise Agreement is otherwise unchanged and remains in full force and effect, and Assignee ratifies and affirms all of its obligations thereunder.

16. Defined terms may be used in the singular or the plural, as the context requires. The words "include," "includes" and "including" are deemed to be followed by the phrase "without limitation." Unless the context in which it is used otherwise clearly requires, the word "or" has the inclusive meaning represented by the phrase "and/or." References to Sections and Exhibits are to Sections and Exhibits of this Agreement unless otherwise expressly provided.

17. This Assignment and Assumption Agreement shall insure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns.

18. This Assignment and Assumption Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, Franchisee, Assignee and Franchisor have caused this Assignment and Assumption Agreement to be duly executed on their behalf by their duly authorized officers as of the day and year above written.

*[signature page follows on next page]*

FRANCHISEE:

INGRASSIA INTERIOR ELEMENTS, INC.,
an Ilinois limited liabilty company

By: _____
Name: Rose Ingrassia-Belida
Its: President

ASSIGNEE:

JP VILLAGE, LLC,
a Nevada limited liabilty company

By: _____
Name: Mohammad Abdeljaber
Its: President

AVF FRANCHISING, LLC,
a Michigan limited liabilty company

By: _____
Name: Keri Durkin
Its: Vice President

## APPENDIX A – SPECIFICS

**ITEM 1:** The location of the Franchise Business as referred to in Sections 2.1 and 7.1 ("Franchise Location") or the area in which the Franchise Business will be located is:

> 7047 Newburg Road
> Rockford, Illinois  61108

**ITEM 2:** The Protected Territory under Section 2.3 is a 10 mile geographic radius, the center point which shall be:

> 7047 Newburg Road
> Rockford, Illinois  61108

**ITEM 3:** The designated opening date of the Franchise Business, under Section 8.1 is _____N/A_____, 2017.

**ITEM 4:** The Designated Owners under Section 8.7 is/are:

> Qasem Abdeljaber
> Luay Abdeljaber
> Mohammad Abdeljaber
> Fadi Abdeljaber
> Musa Abdeljaber
> Meqdad Abdeljaber

**ITEM 5:** Franchisee's address and facsimile number for purposes of notice under Section 17.6 are:

> 1 N. Main Street
> Apt. 314
> Algonquin, Illinois  60102
> Tele:  (773) 510-7365
> Fax: (773) 751-2223

Dated: October 16, 2017

AVF FRANCHISING, LLC

By: _____Keri Durkin_____
Name:  Keri Durkin
Its:  Vice President

JB VILLAGE, LLC

By: _____
Name:  Mohammad Abdeljaber
Its:  President

# APPENDIX B – OBLIGATIONS AND REPRESENTATIONS OF INDIVIDUALS INVOLVED IN THE FRANCHISE BUSINESS

Each of the individuals signing below are directly or indirectly beneficially interested in the Franchise Business and join in and agree to be jointly and severally and personally bound by all the terms and provisions of this Agreement, including but not limited to, those provisions concerning non-compete and non-solicitation set forth in the Franchise Agreement as Article 12 (inclusive of 12.1 through 12.5), and other than those requiring the payment of money by Franchisee, to the same extent and in the same manner as Franchisee is bound. This paragraph will not impair any separate instrument of guaranty or subordination that any of the individuals signing below have executed or may execute in the future.

Each of the individuals signing below represent that the following is correct and true:

**Legal Name of Franchisee:**   JB VILLAGE, LLC

**Type of Entity and State of Organization** (sole proprietorship, corporation, partnership, limited liability company, etc.): a Nevada limited liability company

**d/b/a (if applicable):**  _____

**Address of Franchisee:**   7047 Newburg Road, Rockford, Illinois 61108

**Business Telephone:**   (773) 510-7365

**Name, Address, Phone No., Title and % of Ownership of each Owner of an interest in Franchisee or the Franchise Business:**

| | | |
|---|---|---|
| Name | Qasem Abdeljaber | |
| Address | 26153 Whispering Woods Circle, Plainfield, IL 60585 | |
| Telephone | | |
| Title | Member | Ownership Percentage: 16.65% |
| Name | Luay Abdeljaber | |
| Address | 1214 Arbor Park Dr., Allen, TX 75013 | |
| Telephone | | |
| Title | Member/CFO | Ownership Percentage: 16.67% |
| Name | Mohammad Abdeljaber | |
| Address | 1 N. Main Street, Apt. 314, Algonquin, IL 60102 | |
| Telephone | | |
| Title | Member/CEO and President | Ownership Percentage: 16.67% |
| Name | Fadi Abdeljaber | |
| Address | 4330 New England Ave., Harwood Heights, IL 60706 | |
| Telephone | | |
| Title | Member/Vice President | Ownership Percentage: 16.67% |

| | | |
|---|---|---|
| Name | Musa Abdeljaber | |
| Address | 3628 Salford Dr., Plano, TX  75025 | |
| Telephone | | |
| Title | Member/Secretary | Ownership Percentage: 16.67% |
| Name | Meqdad Abdeljaber | |
| Address | 139 Wildwood Road, Algonquin, IL  60102 | |
| Telephone | | |
| Title | Member/Assistant Secretary | Ownership Percentage: 16.67% |

_____          Dated: October 16, 2017
Qasem Abdeljaber

_____          Dated: October 16, 2017
Luay Abdeljaber

_____          Dated: October 16, 2017
Mohammad Abdeljaber

_____          Dated: October 16, 2017
Fadi Abdeljaber

_____          Dated: October 16, 2017
Musa Abdeljaber

_____          Dated: October 16, 2017
Meqdad Abdeljaber

*[Signature Page to APPENDIX B – OBLIGATIONS AND REPRESENTATIONS OF INDIVIDUALS INVOLVED IN THE FRANCHISE BUSINESS]*

# APPENDIX E

# SECURITY AGREEMENT

The undersigned, JB VILLAGE, LLC, a Nevada limited liability company ("Debtor") hereby grants to AVF FRANCHISING, LLC, a Michigan limited liability company located at 6500 E. 14 Mile Road, Warren, Michigan 48092 and ART VAN FURNITURE, LLC, at 6500 E. 14 Mile Road, Warren, Michigan 48092 (jointly referred to as the "Secured Party) a security interest in the collateral as hereinafter described and agrees as follows:

    a.    All assets of the Debtor, and all of the other following described property in which Debtor now or hereafter acquires an interest in whatever form, whether acquired or arising after the date of this filing, and in any and all proceeds thereof:

        (i)    inventory, equipment and fixtures;

        (ii)    accounts, including deposit accounts;

        (iii)    goods;

        (iv)    documents;

        (v)    letter-of-credit rights;

        (vi)    chattel paper, instruments and general intangibles; and

        (vii)    the Franchise Agreement dated April 9, 2015 by and between Debtor and Ingrassia Interior Elements, Inc. f/k/a Ingrassia Furniture, Inc., as the same may have been amended or supplemented, as assigned to, and assumed by, the Secured Party pursuant to an Assignment and Assumption of Franchise Agreement dated October 16, 2017, and all rights related thereto,

used in connection with Debtor's AVF franchise businesses located at: 7047 Newburg Road, Rockford, Illinois 61108, (the "Collateral").

    2.    **Perfection of Security Interest.** Debtor hereby authorizes Secured Party to file financing statements and any renewals thereof describing the Collateral for purposes of perfecting the security interest granted in the Collateral to Secured Party hereunder. Debtor shall make appropriate entries on its books and records disclosing Secured Party's security interests in the collateral.

    3.    **Indebtedness Secured.** The foregoing security interest is given to secure payment and performance of all obligations and indebtedness of Debtor now or later owing to Secured Party, under this Security Agreement, the Franchise Agreement and all Promissory Notes executed or assumed by Debtor in favor of Secured Party ("Note(s)") and any other agreements that have been or are in the future signed by Debtor, and all extensions or renewals of the indebtedness and obligations. This security interest secures all indebtedness and

obligations now or later owing to Secured Party by Debtor, regardless of whether any such indebtedness or obligation is: (a) not presently intended or contemplated by Debtor or Secured Party; (b) indirect, contingent, or secondary; (c) unrelated to the Collateral or to any financing of the Collateral by Secured Party; or (d) now or later evidenced by a promissory note or other document that does not refer to this security interest or this agreement.

The indebtedness and obligations that are secured by this security interest are collectively called the "Indebtedness."

4. **Warranties, Representations and Agreements** Debtor warrants and represents to, and agrees with, Secured Party as follows: Debtor is a corporation, which is organized and validly existing under the laws of the State of Missouri. Debtor has full power and authority to enter into and perform its obligations under this Security Agreement and the person executing this Security Agreement is authorized to bind Debtor hereunder.

5. **Agreements of Debtor.** Debtor hereby agrees to the following:

   a. Debtor will not cause or permit any lien, security interest or encumbrance to be placed on any Collateral, except in favor of Secured Party and as may be approved by Secured Party.

   b. Debtor will maintain all records concerning the Collateral at Debtor's place of business.

   c. Debtor will furnish Secured Party with the information regarding the Collateral that Secured Party shall from time to time request and will allow Secured Party at any reasonable time to inspect the Collateral and Debtor's records regarding the Collateral.

   d. Debtor will indemnify Secured Party with respect to all losses, damages, liabilities, and expenses (including attorney fees) incurred by Secured Party by reason of any failure of Debtor to comply with any of Debtor's obligations under this Security Agreement or by reason of any warranty or representation made by Debtor to Secured Party in this Security Agreement being false in any material respect.

6. **Secured Party's Right to Perform.** If Debtor fails to perform any obligation of Debtor under this Security Agreement within thirty (30) days or such other reasonable time period after written demand is made by Secured Party, Secured Party may, without giving further notice to or obtaining the consent of Debtor, perform that obligation on behalf of Debtor. Debtor will reimburse Secured Party on demand for any expense that Secured Party incurs in performing any such obligation and will pay to Secured Party interest on it, from the date the expense was incurred by Secured Party, at the highest rate to which Debtor could lawfully agree in writing. Secured Party is not required to perform an obligation that Debtor has failed to perform. If Secured Party does so, that will not be a waiver of Secured Party's right to declare the Indebtedness immediately due and payable by reason of Debtor's failure to perform.

2

7. **Events of Default and Acceleration.** Any part or all of the Indebtedness shall, at the option of Secured Party, become immediately due and payable without notice or demand upon the occurrence of any of the following events of default:

    a. If default occurs in the payment or performance of any of the Indebtedness, when and as it shall be due and payable, including the application of all applicable cure periods.

    b. If default occurs in the performance of any obligation of Debtor to Secured Party under this Security Agreement, Franchise Agreement, Note(s) or other agreement that now or later secures or relates to any indebtedness or obligation now or later owing by Debtor to Secured Party or that secures or relates to any guaranty of any such indebtedness or obligation ("Security Documents").

    c. If any warranty, representation or statement made by Debtor to Secured Party regarding all or part of the Indebtedness in this Security Agreement or in any of the Security Documents was false in any material respect when made or furnished.

    d. If Debtor dissolves, becomes insolvent, or makes an assignment for the benefit of creditors.

    e. If any guaranty that now or later secures payment or performance of all or any part of the Indebtedness is terminated or limited for any reason, without the written consent or agreement of Secured Party.

    f. If any attachment, garnishment, levy, execution or other legal process is at any time issued against or placed upon the Collateral.

    g. If a voluntary or involuntary case in bankruptcy, receivership or insolvency is at any time commenced by or against Debtor, or if any attachment, garnishment, levy, execution, or other legal process is at any time issued against or placed upon any Collateral, then the entire Indebtedness shall automatically become immediately due and payable, without notice or demand. All or part of the Indebtedness also may become, or may be declared to be, immediately due and payable under the terms of any of the Security Documents.

8. **Secured Party's Rights and Remedies.** Secured Party shall have all rights and remedies of a secured party under applicable laws.

9. **Expenses.** Debtor shall reimburse Secured Party on demand for all reasonable attorney fees, legal expenses and other expenses that Secured Party incurs in protecting and enforcing its rights under this Security Agreement.

3

10-2-2017 (Amendment)

10. **Amendments and Waivers.** No provision of this Security Agreement may be modified or waived except by a written agreement signed by Secured Party. Secured Party will continue to have all of its rights under this Security Agreement even if it does not fully and promptly exercise them on all occasions. Secured Party is not required to sue upon or otherwise enforce payment of the Indebtedness or any other security before exercising its rights under this Security Agreement.

11. **Notices.** Any notice to Debtor or to Secured Party shall be deemed to be given if and when mailed, with postage prepaid, to the respective registered office or last known address of Debtor or Secured Party, or if and when delivered personally.

12. **Applicable Law.** This Security Agreement shall be governed by and interpreted in accordance with the laws of the State of Michigan.

13. **Binding Effect.** This Security Agreement shall be binding upon and inure to the benefit of Debtor and Secured Party and their respective successors, and assigns.

**IN WITNESS WHEREOF**, the Debtor has caused this Security Agreement to be executed on this 16th day of October, 2017.

**DEBTOR:**

JB VILLAGE, LLC
a Nevada limited liability company

By: _____
Name: Mohammad Abdeljaber
Its: President